Good morning. May it please the court, Jody Thorpe on behalf of Mr. Alvarez, I'd like to reserve two minutes for rebuttal. This case is about whether Mr. Alvarez should be held criminally responsible for damage to a rental car that the co-defendant in his case was driving. Despite the fact that the co-defendant was driving the rental car and ran into the back of the car that Mr. Alvarez was driving, the co-defendant was not held criminally responsible for the damage to the car that Mr. Alvarez was. Mr. Alvarez was driving the car, a car in front of the co-defendant, which had undocumented people in it.  They're obviously in an operation together. I mean, there's no doubt about that. The two of them are working in concert and that, you know, they're observed that some people get into Mr. Alvarez's car, some people get into the other car, and then I guess essentially things break bad when the police try to stop them and your client then can't stop in time to not hit the tracks, right? Well, that's correct. And then the rear end, you know, everyone. Right. There was no, I guess, training for police evasion or high speed or avoiding tracking, avoiding tire tracking or something. Well, there was no – Mr. Alvarez was not speeding. He was not exceeding the speed limit. There was no allegation of that. It is a road where, you know, that road's up to 50 miles per hour, so it's a high speed road. So they were – the agent indicated that Mr. Alvarez and the co-defendant were driving at a high rate of speed, which is consistent with the road. The Border Patrol agent also said that he placed the spike strips around a curve in the road. That's on page 181 of the ER where he – in the probable cause statement. And when Mr. Alvarez came around the curve in the road, at that point in time, they had never been lit up. You're making your approximate cause argument? I mean, you seemed in your briefs you were making two arguments. One, it wasn't sufficiently close. The links in the chain weren't sufficiently close for approximate cause. And then you also made the argument that it wasn't an element of the offense. So we know that transportation of the alien involves transportation, so it seems like the element of the offense doesn't work. So I don't understand the proximate cause here because, obviously, they were transporting the aliens and one car ran into the other. Well, where there's – for the rental car company to be a victim, it would have to be a direct and proximate cause. And in this case, if there's an intervening cause that caused the accident, then there's no direct or proximate cause. So here the intervening cause was the Border Patrol's decision to stop the cars in that unsafe manner against its own Border Patrol policies without first having asked the cars to pull over in the traditional methods, such as the car who – the Border Patrol car that was traveling behind the cars never lit up the car, never used the siren. So in your view, the intervening cause is the law enforcement's effort to stop the offense from happening. So they were trying to stop the perpetrators. And you're saying that the method they used to stop them was an intervening cause. Is that correct? Is that the argument? That's correct. That's correct. So is law enforcement responsible for the damage then? Is that – Well, I think that would be a civil issue. I mean, here really there's no question that the rental car company is going to get paid. There's contractual liability. There's civil liability. But it's really a civil issue as to who pays that money. I sort of thought that you were more – well, that that was secondary. But before that, you were trying to get – say that he wasn't advised of the restitution, and therefore you were trying to – that you were making arguments that he was entitled to a jury trial, that he – that withdrawing of the plea wasn't – wouldn't have been sufficient, that it was punitive, and that – I thought those arguments were what you were making first. Well, yes, I do have those arguments. So you're not conceding those arguments by just jumping to – No. No. You tried to distinguish – I wrote, or I'm not sure how to pronounce that case, on the grounds that I didn't consider Apprendi, but it's the language of that paragraph says Apprendi is not applicable in this situation. Well, it – So is that – doesn't that eliminate that argument? What AROG did was really rejected the argument saying that the arguments were pro forma, as opposed to doing an analysis as to whether the arguments themselves had merit. Didn't do much analysis, but it does say, we held in green that Apprendi does not apply to restitution orders, and Paroline doesn't invalidate that holding. So that seems to resolve that issue, doesn't it? It seems directly on point. Well, you know, where they didn't adopt any reasoning for that – and my argument is based on Southern Union, Alene, and Apprendi all combined, and there's nothing to suggest that they considered that combination of Southern Union and Alene along with Apprendi. So I think when you look at the briefing in this case and the fact that in this case the Apprendi argument is really paramount because we have the issues of not only the amount of restitution but causation, which really should go before a jury. Well, sadly, we've held that we can't – a three-judge panel can't overrule a prior three-judge panel just because they did a bad job. But where they have not – in my 28-J letter I cited Vique, which noted that where a panel disregards essentially the argument on a pro forma basis, that, you know, that's not precedent for this Court. There is no precedent for this Court as to the, you know, exact reasons that we're raising. As far as the Rule 11 violation, there's – you know, the Court found that there was a Rule 11 violation. Mr. Alvarez was not advised of the restitution. Where the district court made the error was that the district court said that not imposing restitution was a remedy that is not available for a Rule 11 violation, and that's just not correct. Where restitution is discretionary, it is a remedy that is available. And so I'd ask that the Court remand on those grounds for the Rule 11 issue. And then the other issue here. Did the district court say it wasn't available or just that it wasn't going to do it? I'm looking for the exact language here. On ER page 21, lines 12 to 13, the district court says the remedy requested is unavailable for an involuntary plea. And then as far as, you know, the other issue is whether the court could have even imposed restitution as a condition of supervised release where restitution constitute punishment, and punishment and the need for restitution are both excluded as considerations for any imposition of a term of supervised release. Our argument is that it cannot be imposed because we now know that restitution is punishment. Well, it's not more than punishment, though. Indeed, punishment is the minor fact that the Supreme Court was explicit in saying that. So why can't restitution be imposed for other reasons, not for punishment, but for restitution to make the injured party whole? Well, when you look at Behe, the court doesn't indicate that it can't have, that it has to be all punishment. The court, the Ninth Circuit panel held that conditions may not involve punishment. So that suggests that any part of it. because the Supreme Court's comment suggested that punishment lurks in the background always. That's why the excessive fines clause may kick in. So your argument seems to me to lead to the conclusion you can never have restitution because there might be an element of punishment there, and punishment is not permitted as part of supervised release. Well, in this case, the language that the district court used shows that the district court was punishing Mr. Alvarez by imposing the restitution. You said a few minutes ago that the rent-a-car company is going to get made whole. Why isn't it the judgment of the court that the proper party to make them whole is the defendant as opposed to the border patrol? And that has nothing to do with punishment. It's just who should bear that cost. Right. That sounds like a purpose of restitution separate and apart from punishment. Well, that's a civil consideration as to whether the... Restitution usually is to make the injured party whole. However, in this case, in imposing supervised release, it's explicitly excluded. Restitution is excluded from imposition as a consideration for imposition of a condition of supervised release. Punishment is excluded. There's nothing that says you can't impose restitution for purposes of restitution. Under 3583D, where the punishment is excluded, A7 is also excluded, which is the need to consider restitution for a defendant. I see that my time is up. May it please the court. Daniel Zip on behalf of the United States. Your Honor, in the United States... Good morning. In the United States v. Batson, this court held that the supervised release statute unambiguously authorizes district courts to order restitution as a condition of supervised release. There's nothing in the Supreme Court's subsequent decision in Paroline that is clearly irreconcilable with that prior decision, and the district court in this case was authorized to order restitution. Let me ask you this. It would appear that restitution wasn't mentioned under Rule 11. So how do I know from the record that the district court did not misunderstand what options were available? Because it's one thing to say, hey, you're going to pay restitution, and so that, you know, homie, don't play that. We're not having that situation. So if you want to withdraw your plea, withdraw your plea. If you don't like it, and he didn't want to withdraw his plea, but what if, I think, as counsel for the appellant argued, saying, well, the district court just didn't seem to understand that it had the option not to impose restitution. Well, I think if you look at ER 12, the court, when it first announced its decision on that, it said that I'm not prepared to offer you essentially the windfall of not having to pay restitution, that there's enough of a disconnect between not being advised of restitution at the Rule 11 colloquy and the payment that is owed to the rental car company. He said, I'm not prepared to find that that's one should follow the other. There's no indication, if you read the entire statement of what the court said, there's no indication that he felt that he was obligated or bound, that he had to give restitution, that it was mandatory. He simply said, rightfully so, that there's a significant disconnect between someone not being advised of a Rule 11 right and what the rental car company should be paid. Furthermore, this court has held that as long as the magistrate court told, as it did in this case, that there is a potential for a fine that was more than the restitution amount, that any error was harmless. And the district court gave the defendant the option to withdraw his plea, and he declined. So in light of that, the court rightfully said simply that it wasn't prepared to reduce the restitution, not that it couldn't. Well, so if it's in, appellant's counsel basically argues that the one way to read the record is the district court didn't understand that it had the option of going forward and not imposing restitution as a response. And you've made an argument as that the district court understood that by its actions, even though the district court didn't specifically say that. So if it's in equipoise, if you can look at it one way and you can look at it the other way, who wins? Well, I'm not sure that it is in equipoise. The entire point of the hearings that the court held was to decide whether it could even give restitution in the first place. There was never any discussion at any point about restitution being mandatory or that the court didn't have the discretion not to give restitution. Well, I guess I would sort of, you know, and maybe if I were in your position, maybe I would say, well, the district court's presumed to understand its discretion, you know, absent a showing to the contrary that we sort of like we presume the jury knew what the law was, we presume the judge knew what the law was, unless you can clearly establish otherwise. Yes. I don't know. That kind of seems like an argument I might make if I were standing where you are. If I looked at it as in equipoise. Then even if it is in equipoise. I don't know. I'm just throwing that out. There's nothing in the record one way or the other to suggest that the court felt that it was bound and felt that it didn't have the discretion to order the restitution here. And I would agree, Your Honor, that even if it is equally balanced, we have to presume that the court, when he's holding these hearings, understands his role as a judge, that he can, as a matter of discretion, order restitution or not order restitution. Did you ask for more than what the court ordered? I don't recall offhand, Your Honor. Or did probation suggest more? And did the court lower the amount of restitution? I believe that's correct. But I don't have the numbers in front of me. As to the defendant's proximate cause argument, this court in Gamatech held that the question is whether there's a causal nexus between the criminal offense and the damage suffered that's not sufficiently attenuated, either temporally or factually. In this case, the defendant's crime of transporting aliens directly caused the damage to the vehicle. Even in cases where there was an intervening cause, the courts have held that the only showing that we need to make is that it was directly related, that the intervening cause was directly related to the criminal activity. And here, obviously, the Border Patrol stopping criminal activity is directly related. On that point, throughout the opposing briefs, make frequent reference to the fact that there's no evidence that he was speeding, that this was a blind curve, that the Border Patrol was negligent. None of that's in the record. If you look, the record in this case is pretty thin, and it consists primarily of the PSR. At the initial sentencing, the PSR stated that the defendant was traveling at a high rate of speed. It included interviews from the material witnesses that were in the van, who said that he was traveling at a high rate of speed and they feared for their safety, and statements from the co-defendant, who said that she was traveling at a high rate of speed. The defendant filed an objection to the PSR on legal grounds, but made no challenge to those factual findings in the PSR. So that's where the record stands. This idea that he wasn't speeding or that it was a blind curve or that the Border Patrol was negligent is simply not supported in the record. And even if it was, the question is not whether the Border Patrol was negligent. The question is whether that was directly related to his crime, and it clearly was. As to the breach of the plea agreement, the government in this case never actually even recommended restitution at the initial sentencing hearing. It was only after the defendant himself offered that he needed to pay restitution and the court asked the United States for supporting documentation. And even if the government had made a recommendation, the law under PAMASI is clear that if the plea agreement is silent as to whether the United States is recommending restitution and only talks about custody, that it's not a breach of the plea agreement for the government to recommend restitution. Those are all the issues. Unless anyone has any further questions? Apparently not. Thank you. Can I have just two minutes for rebuttal? You can have one minute. I don't know where we left it. I guess four seconds so you can have the whole minute. It's a gift. Thank you. I just wanted to point out that it is in the record that the spike strips were around a corner. If you look on page 181 of the ER, the Border Patrol agent indicates that once Mr. Alvarez turned the corner, the Border Patrol agent put up his hands for him to stop. Mr. Alvarez immediately stopped but could not slow down enough to avoid the spike strips. The problem is tailgating? It's really the second driver following too close? Well, I think the second driver had the same problem. The second driver comes around the curve as well and then sees that there's a car stopped. She braked and the Border Patrol agent says she braked as well but couldn't stop. The first car stopped. The second car didn't. It sounds like the second car was trailing too close. The first car stopped because the spike strips stopped it. That's how the first car stopped. The second car comes around the corner and then there's a car stopped in the road. And although she tried to brake, she couldn't. But technically, having been an old traffic judge many, many years ago, you're supposed to travel at a speed that will allow you to respond to things that are in the road. Like there could be a box in front of you, there could be any number of things. And if you're going around a corner that is blind, that you're not supposed to go zipping around it and assuming that nothing would be there. So if this is all part of let's get these seven people out of here and they're in essentially like a motorcade, as it were, an alien motorcade, why isn't it that they were both going too fast? Well, again, if the co-defendant was going too fast and was following too close behind, it really doesn't make sense that the court would impose restitution for Mr. Alvarez and not for the co-defendant who was engaging in those poor traffic practices. I'm afraid you got your two minutes, but not the way you wanted. So thank you for your argument. We thank the counsel for your helpful arguments. The case just argued is submitted.
judges: Clifton, Callahan, Ikuta